**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY TURGEON, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| WHIRLPOOL CORP., | |
| Defendant. | |

CLASS ACTION COMPLAINT

Plaintiff Nancy Turgeon ("Plaintiff"), by her undersigned attorneys, brings this class action complaint against Whirlpool Corp. ("Whirlpool" or "Defendant").  Plaintiff's allegations are based upon personal knowledge as to her own acts and upon information and belief as to all other matters.

**JURISDICTION**

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question). This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

**NATURE OF THE ACTION**

3.      This is a class action lawsuit regarding Defendant's false and misleading advertising of its Whirlpool-brand ovens featuring a High-Temperature Self-Cleaning Cycle (the "Ovens").

4.      Defendant advertises the Ovens as containing a High-Temperature Self-Cleaning Cycle.  According to Whirlpool's Use & Care Guide, the "Self-Cleaning Cycle uses very high temperatures, burning soil to a powdery ash."  Indeed, because of the Ovens feature this High-Temperature Self-Cleaning Cycle, Defendant instructs owners of the Ovens not to use chemicals or cleansers to clean them:  "Do Not Use Oven Cleaners – No commercial oven cleaner or oven liner protective coating of any kind should be used in or around any part of the oven."

5.      However, the High-Temperature Self-Cleaning Cycle does not function as advertised because use of the feature impairs the functionality of the Ovens, up to and including rending the Ovens inoperable (the "Self-Cleaning Defect").  The Self-Cleaning Defect is a result of insufficient heat resistance in the Ovens and their components.  The defect is caused by Defendant's failure to equip the Ovens with appropriate heat-resistant insulation, properly functioning thermostats, thermo-regulators, cooling fans, and/or adequate heat-resistant internal components that can withstand the extreme heat produced during the High-Temperature Self-Cleaning Cycle.  As a

1 result, consumers are left with an Oven that cannot be cleaned without the risk of rendering the

2 Oven inoperable.

3       6.     Plaintiff seeks relief in this action individually, and as a class action on behalf of

4 similarly situated purchasers of the Ovens for violation of the Magnuson-Moss Warranty Act;

5 breach of express warranty; breach of the implied warranty of merchantability; unjust enrichment;

6 negligent misrepresentation; fraudulent concealment; intentional misrepresentation; fraud; violation

7 of California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*; violation of

8 California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*; and violation

9 of California's False Advertising Law ("FAL"), Business & Professions Code §§ 17500, *et seq.*

10 **THE PARTIES**

11       7.     Plaintiff Nancy Turgeon is a citizen of California, residing in Sacramento,

12 California.  During the class period, Plaintiff Turgeon purchased an Oven with the High-

13 Temperature Self-Cleaning Cycle, model WOS51EC0AS02 for personal use.  Prior to purchasing

14 her Oven, Ms. Turgeon reviewed the Oven's features and saw that the Oven featured a High-

15 Temperature Self-Cleaning Cycle.  The Oven featured "Precise Clean®."  "The Precise Clean®

16 cleaning system tracks the time between self-clean cycles to determine the right cycle time.  This

17 makes sure the self-cleaning cycle only lasts as long as necessary for optimal cleaning and energy

18 savings.  No harsh chemicals or cleansers are required."  Plaintiff Turgeon saw these

19 representations prior to purchase, and understood them as representations and warranties that the

20 Oven's High-Temperature Self-Cleaning feature was effective for cleaning her Oven without the

21 use of harsh chemicals or cleansers.  She understood that her Oven would function properly after

22 the use of the High Temp Self-Cleaning Cycle.  Plaintiff Turgeon relied on these representations

23 and warranties in deciding to purchase her Oven.  Accordingly, these representations and warranties

24 were part of the basis of the bargain, in that she would not have purchased her Oven had she known

25 that use of the High-Temperature Self-Cleaning Cycle would impair the functionality of her Oven.

26 In reliance on these representations and warranties, Plaintiff Turgeon paid a tangible increased cost

27 for her Oven, which was worth less than represented because of the Self-Cleaning Defect.  Plaintiff

28

1  Turgeon also understood that in making the sale, her retailer was acting with the knowledge and

2  approval of Defendant and/or as the agent of Defendant.  Plaintiff Turgeon further understood that

3  the purchase involved a direct transaction between herself and Defendant.  However, upon use of

4  the High-Temperature Self-Cleaning Cycle, Plaintiff's Oven ceased to function, which required

5  Plaintiff to spend over $200 on repairs.

6          8.     Defendant Whirlpool is a Delaware corporation with its principal place of business

7  located at 2000 N. M-63, Benton Harbor, MI  49022.  Whirlpool designs, manufactures, markets,

8  distributes, services, repairs, and sells household appliances, including the Ovens, nationwide and in

9  California.  Whirlpool is the warrantor and distributor of the Ovens in the United States.  At all

10  relevant times, Whirlpool was and is engaged in the business of designing, manufacturing,

11  constructing, assembling, marketing, distributing, and selling household appliance components in

12  California and throughout the United States.

13  **VENUE**

14          9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because

15  Defendant does business throughout this district, and a substantial part of the events giving rise to

16  Plaintiff's claims took place within this judicial district.

17  **FACTUAL ALLEGATIONS**

18         10.    At all relevant times, Defendant has designed, manufactured, distributed, and sold

19  the Ovens.  Defendant has sold, directly or indirectly, through retail outlets, thousands of Ovens

20  equipped with a High-Temperature Self-Cleaning Cycle in California and nationwide.

21         11.    The Ovens also feature "Precise Clean."  According to Defendant, "[t]he Precise

22  Clean® cleaning system tracks the time between self-clean cycles to determine the right cycle time.

23  This makes sure the self-cleaning cycle only lasts as long as necessary for optimal cleaning and

24  energy savings.  No harsh chemicals or cleansers are required."

25         12.    For self-cleaning ovens, Defendant's Use & Care Guide instructs consumers to "Not

26  Use Oven Cleaners – No commercial oven cleaner or oven liner protective coating of any kind

27  should be used in or around any part of the oven."  The Use & Care Guide further instructs

28

---

CLASS ACTION COMPLAINT          3

1  consumers to "not use oven cleaners" to clean the oven cavity and instead instructs them to only use

2  the Ovens' High-Temperature Self-Cleaning Cycle.  Accordingly, in order to clean the Ovens,

3  consumers must use the Ovens' High-Temperature Self-Cleaning Cycle.

4  13.  Given these instructions, the High-Temperature Self-Cleaning Cycle should clean

5  the Ovens without the use of harsh chemicals or cleansers and without impairing the Ovens'

6  functionality.

7  14.  However, the Ovens' High-Temperature Self-Cleaning Cycle fails to operate in this

8  manner because of the Self-Cleaning Defect.  Due to the use of inappropriate and inadequate heat-

9  resistant and heat-regulating internal components, the extreme temperatures of the High-

10  Temperature Self-Cleaning Cycle causes the Ovens' thermostat, thermal fuses, control panel,

11  motherboard, door glass, door latch, and/or other internal components to short-circuit, overheat, or

12  otherwise break during normal use.  As a result of the Self-Cleaning Defect, use of the High-

13  Temperature Self-Cleaning Cycle impairs the functionality of the Ovens.  Furthermore, because of

14  the Self-Cleaning Defect, the High-Temperature Self-Cleaning Cycle is unusable and worthless.

15  15.  The alleged Self-Cleaning Defect is inherent in each Oven and was present in each

16  Oven at the time of sale.

17  16.  Defendant has superior and exclusive knowledge of the Self-Cleaning Defect, and

18  knew or should have known that the defect was not known or reasonably discoverable by Plaintiff

19  and Class Members before they purchased the Ovens.

20  17.  Defendant has known about the Self-Cleaning Defect for years through sources not

21  available to consumers, including pre-release testing data, early consumer complaints about the

22  Self-Cleaning Defect to Defendant and its service technicians, testing conducted in response to

23  those complaints, high failure rates, and replacement part sales data, among other internal sources of

24  aggregate information about the problem.

25  18.  Indeed, in or around January 2011, Whirlpool issued TSP #4317445C-A to its

26  service departments advising them that Whirlpool and KitchenAid Built-In Single and Double

27  Ovens "do[] not operate after a Self-Clean cycle" and the "oven completely stops during the Self-

28

1   Clean cycle." Whirlpool stated that the affected ovens' thermostat was unintentionally exposed to

2   hot air or power interruption during the self-clean cycle and instructed service technicians to replace

3   the rear oven thermostat and blower assembly.

4        19.    Moreover, in or around September 2012, Whirlpool issued TSP #W10540280 to its

5   service departments advising them that "KitchenAid Self Clean Wall Ovens" are experiencing

6   issues with the door latch assembly becoming deformed during the self-clean cycle. Whirlpool

7   stated that "[h]ot air could flow around the Glass Door Liner and deform the 'light switch activation

8   lever'" and further instructed service technicians to replace the glass door liner of the Ovens.

9        20.    Despite this knowledge, Defendant never disclosed the Self-Cleaning Defect to

10  consumers.

11       21.    The existence of the Self-Cleaning Defect is a material fact that a reasonable

12  consumer would consider when deciding whether to purchase an oven that was equipped with a

13  High-Temperature Self-Cleaning Cycle. Had Plaintiff and other Class Members known that the

14  Ovens were equipped with defective components, they would not have purchased the Ovens.

15       22.    Reasonable consumers, like Plaintiff, reasonably expect that a High-Temperature

16  Self-Cleaning Cycle will function properly in a manner that will not impair the functionality of the

17  Oven.

18                          **CLASS ACTION ALLEGATIONS**

19       23.    Plaintiff seeks to represent a class defined as all persons in the United States who

20  purchased an Oven (the "Class").

21       24.    Plaintiff also seeks to represent a subclass of all Class members who purchased an

22  Oven in the State of California (the "California Subclass").

23       25.    Members of the Class and the California Subclass are so numerous that their

24  individual joinder herein is impracticable. On information and belief, members of the Class and

25  California Subclass number in the tens of thousands. The precise number of Class members and

26  their identities are unknown to Plaintiff at this time but will be determined through discovery. Class

27

28

members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third party retailers and vendors.

26.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

    (a)    whether Defendant misrepresented the Ovens as featuring an effective High-Temperature Self Cleaning Feature;

    (b)    whether the High-Temperature Self-Cleaning Cycle was material to consumers;

    (d)    whether Defendant knew about the Self-Cleaning Defect;

    (e)    whether Defendant had a duty to disclose the Self-Cleaning Defect;

    (f)    whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

    (g)    whether Defendant breached the Magnuson-Moss Warranty Act;

    (h)    whether Defendant breached the Song-Beverly Act;

    (i)    whether Defendant breached an express warranty; and

    (j)    whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and Class members are entitled to restitution, injunctive, and/or monetary relief and, if so, the amount and nature of such relief.

27.     Plaintiff's claims are typical of the claims of Class and Subclass members because the Plaintiff, Class, and Subclass members all purchased Ovens featuring a High-Temperature Self-Cleaning Cycle.

28.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action

CLASS ACTION COMPLAINT                                                                 6

vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

29.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**<u>COUNT I</u>**
**Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. §§ 2301, *et seq.***

30.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

31.     Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

32.     The Ovens are consumer products as defined in 15 U.S.C. § 2301(1).

33.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

34.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

35.     In connection with the sale of the Ovens, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.

36.     In fact, the Ovens' High-Temperature Self-Cleaning Cycle does not function as advertised due to the Self Cleaning Defect.

37.     By reason of Defendant's breach of warranties that the Ovens featured an effective High-Temperature Self-Cleaning Cycle that would not impair the functionality of the Ovens, Defendant violated the statutory rights due Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and Class members.

38.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach because:  (a) they would not have purchased the Ovens on the same terms if the truth concerning the Self-Cleaning Defect had been known; (b) they paid a price premium due to the High-Temperature Self-Cleaning Cycle; (c) the Ovens did not perform as promised due to the Self-Cleaning Defect; and (d) Plaintiff and Class members have paid and will continue to pay money to diagnose, repair, or replace the Ovens' electrical and other internal components damaged as a result of the Self-Cleaning Defect.

## COUNT II
### Breach of Express Warranty

39.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

40.     Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

41.     Defendant, as the designer, manufacturer, marketer, distributor, or seller expressly warranted that the Ovens were fit for their intended purpose in that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.

42.     In fact, the High-Temperature Self-Cleaning Cycle is not effective for cleaning the Ovens and the Ovens do not function properly when the High-Temperature Self-Cleaning Cycle is used due to the Self-Cleaning Defect.

43.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach because:  (a) they would not have purchased the Ovens on the same terms if the

truth concerning the Self-Cleaning Defect had been known; (b) they paid a price premium due to the High-Temperature Self-Cleaning Cycle; (c) the Ovens did not perform as promised due to the Self-Cleaning Defect; and (d) Plaintiff and Class members have paid and will continue to pay money to diagnose, repair, or replace the Ovens' electrical and other internal components damaged as a result of the Self-Cleaning Defect.

**COUNT III**
**Breach of Implied Warranty of Merchantability**

44.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

45.     Plaintiff brings this claim individually and on behalf of the members of the Class and the Subclass against Defendant.

46.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller impliedly warranted that the Ovens were fit for their intended purpose in that that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.

47.     Defendant breached the warranty implied in the contract for the sale of the Ovens in that the Ovens could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose in that the High-Temperature Self-Cleaning Cycle does not function properly due to the Self-Cleaning Defect.  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

48.     Plaintiff and Class members are the intended beneficiaries of Defendant's implied warranties.

49.     In reliance upon Defendant's skill and judgment and the implied warranties, Plaintiff and Class members purchased the Ovens to use the High-Temperature Self-Cleaning Cycle.

50.     The Ovens were not altered by Plaintiff and Class members.  The Ovens were defective when they left the exclusive control of Defendant.

51.     Defendant knew the Ovens would be purchased and used without additional testing of the High-Temperature Self-Cleaning Cycle by Plaintiff and Class members.  The Ovens were defectively designed and unfit for their intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

52.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Ovens on the same terms if the truth concerning the Self-Cleaning Defect had been known; (b) they paid a price premium due to the High-Temperature Self-Cleaning Cycle; (c) the Ovens did not perform as promised due to the Self-Cleaning Defect; and (d) Plaintiff and Class members have paid and will continue to pay money to diagnose, repair, or replace the Ovens' electrical and other internal components damaged as a result of the Self-Cleaning Defect.

<u>**COUNT IV**</u>
**Unjust Enrichment**

53.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

54.     Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

55.      "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state."  *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) (quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007)).

56.     "Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn," *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 58, California law applies to those claims.

57.     Plaintiff and Class members conferred a benefit on Defendant by purchasing the Ovens.

58.     Defendant misrepresented that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.

59.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Ovens.  Retention under these circumstances is unjust and inequitable because Defendant misrepresented that the Ovens they would function properly after the use of the High-Temperature Self-Cleaning Cycle which caused injuries to Plaintiff and Class members because (a) they would not have purchased the Ovens on the same terms if the truth concerning the Self-Cleaning Defect had been known; (b) they paid a price premium due to the High-Temperature Self-Cleaning Cycle; (c) the Ovens did not perform as promised due to the Self-Cleaning Defect; and (d) Plaintiff and Class members have paid and will continue to pay money to diagnose, repair, or replace the Ovens' electrical and other internal components damaged as a result of the Self-Cleaning Defect.

60.     Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

**COUNT V**
**Negligent Misrepresentation**

61.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

63.     Defendant represented that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.  To communicate this representation and to convince Plaintiff and Class Members to purchase an, Defendant labeled and

advertised the Ovens as featuring a High-Temperature Self-Cleaning Cycle.  Defendant knew, or should have known, that this information was false and/or misleading to Plaintiff and Class Members.

64.     The High-Temperature Self-Cleaning Cycle feature is a material fact that influenced Plaintiff's and Class members' purchase of the Ovens.

65.     Defendant knowingly concealed the Self-Cleaning Defect with the intent to induce Plaintiff and Class members to act upon the High-Temperature Self-Cleaning Cycle feature by purchasing the Ovens.

66.     At the time Defendant sold the Ovens featuring the High-Temperature Self-Cleaning Cycle, Defendant knew or should have known that the Self-Cleaning Defect impaired the Ovens' functionality.

67.     Plaintiff and Class members reasonably, justifiably, and detrimentally relied on the High-Temperature Self-Cleaning Cycle in purchasing their Ovens and, as a proximate result thereof, have and will continue to suffer damages in the form of lost money from the purchase price and increased repair costs over the life of the Ovens.

68.     Plaintiff and Class members suffered a loss of money as a result of Defendant's false information because:  (a) they would not have purchased the Ovens on the same terms if the truth concerning the Self-Cleaning Defect had been known; (b) they paid a price premium due to the High-Temperature Self-Cleaning Cycle; (c) the Ovens did not perform as promised due to the Self-Cleaning Defect; and (d) Plaintiff and Class members have paid and will continue to pay money to diagnose, repair, or replace the Ovens' electrical and other internal components damaged as a result of the Self-Cleaning Defect.

**COUNT VI**
**Fraudulent Concealment / Nondislosure**

69.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

71.     Defendant represented that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.  Defendant knew at the time of sale that this representation was false because Defendant issued service bulletins to remedy the issues associated with the High-Temperature Self-Cleaning Cycle and the Self-Cleaning Defect since at least 2011.

72.     Defendant fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class that use of the Ovens' High-Temperature Self-Cleaning Cycle could damage or otherwise impair the functionality of the Ovens due to the Self-Cleaning defect.

73.     Defendant had exclusive knowledge of the Self-Cleaning Defect at the time of sale. The Self-Cleaning Defect is latent and not something that Plaintiff or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible for individual consumers to test the Ovens' internal components prior to purchase. The Self-Cleaning Defect would not be disclosed by careful, reasonable inspection by the purchaser.

74.     Defendant had the capacity to, and did, deceive Plaintiff and Class members into believing that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.

75.     Defendant undertook active and ongoing steps to conceal the Self-Cleaning Defect. Plaintiff is aware of nothing in Defendant's advertising, publicity, or marketing materials that discloses the truth about the Self-Cleaning Defect, despite Defendant's awareness of the problem.

76.     The facts concealed and/or not disclosed by Defendant to Plaintiff and the Class are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) an Oven.

77.     Defendant had a duty to disclose the presence of the Self-Cleaning Defect at the time of sale.

78.     Defendant intentionally concealed and/or failed to disclose that use of the High-Temperature Self-Cleaning Cycle in the manner advertised was ineffective for cleaning the Ovens and that use of High-Temperature Self-Cleaning Cycle could damage or otherwise impair the functionality of the Ovens.

79.     Plaintiff and the Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the Ovens.

80.     Plaintiff and Class members suffered a loss of money as a result of Defendant's false information because: (a) they would not have purchased the Ovens on the same terms if the truth concerning the Self-Cleaning Defect had been known; (b) they paid a price premium due to the High-Temperature Self-Cleaning Cycle; (c) the Ovens did not perform as promised due to the Self-Cleaning Defect; and (d) Plaintiff and Class members have paid and will continue to pay money to diagnose, repair, or replace the Ovens' electrical and other internal components damaged as a result of the Self-Cleaning Defect.

## COUNT VII
### Intentional Misrepresentation

81.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

82.     Plaintiff brings this claim individually and on behalf of the Class and Subclass against Defendant.

83.     Defendant willfully, falsely, and knowingly misrepresented that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.

84.     Defendant knew at the time of sale that this representation was false because Defendant issued service bulletins to remedy the issues associated with the High-Temperature Self-Cleaning Cycle and the Self-Cleaning Defect since at least 2011.

85.     Defendant's misrepresentation was made with the intent that the general public, including Plaintiff and Class members, would rely upon it.  Defendant's misrepresentation was made with knowledge of the Self-Cleaning Defect, or in reckless disregard of the truth thereof.

86.     In actual and reasonable reliance upon the misrepresentation, Plaintiff and Class members purchased the Ovens for their intended and reasonably foreseeable purposes.  Plaintiff and Class members were unaware of the true facts concerning the High-Temperature Self-Cleaning Cycle and the Self-Cleaning Defect, which Defendant suppressed and failed to disclose. Defendant's misrepresentation was material, in that if Plaintiff and Class members had been aware of the suppressed facts, Plaintiff and Class members would not have purchased the Ovens for the same price, if at all.

87.     Plaintiff and Class members are informed and believe, and thereon allege, that Defendant misrepresented that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers with the intent to defraud Plaintiff and Class members.  Plaintiff and Class members were unaware of Defendant's intent and relied upon Defendant's misrepresentation of the High-Temperature Self-Cleaning Cycle in deciding to purchase the Ovens.

88.     Plaintiff's and Class members' reliance upon Defendant's misrepresentation was reasonable.  The Self-Cleaning Defect is latent and not something that Plaintiff or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible for individual consumers to test the Ovens' internal components prior to purchase.  The Self-Cleaning Defect would not be disclosed by careful, reasonable inspection by the purchaser.

89.     In actual and reasonable reliance upon Defendant's misrepresentation, Plaintiff and Class members purchased the Ovens, the direct and proximate result of which was injury and harm to Plaintiff and Class members because: (a) they would not have purchased the Ovens on the same terms if the truth concerning the Self-Cleaning Defect had been known; (b) they paid a price

premium due to the High-Temperature Self-Cleaning Cycle; (c) the Ovens did not perform as promised due to the Self-Cleaning Defect; and (d) Plaintiff and Class members have paid and will continue to pay money to diagnose, repair, or replace the Ovens' electrical and other internal components damaged as a result of the Self-Cleaning Defect.

## COUNT VIII
### Fraud

90.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

91.     Plaintiff brings this claim individually and on behalf of the Class and Subclass against Defendant.

92.     As discussed above, Defendant provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the Ovens, including but not limited to the fact that the Ovens' High-Temperature Self-Cleaning Cycle was plagued by the Self-Cleaning Defect.

93.     The misrepresentation made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, was intended to induce and actually induced Plaintiff and Class members to purchase the Ovens.

94.     The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

95.     Plaintiff and Class members suffered a loss of money as a result of Defendant's fraudulent conduct because:  (a) they would not have purchased the Ovens on the same terms if the truth concerning the Self-Cleaning Defect had been known; (b) they paid a price premium due to the High-Temperature Self-Cleaning Cycle; (c) the Ovens did not perform as promised due to the Self-Cleaning Defect; and (d) Plaintiff and Class members have paid and will continue to pay money to diagnose, repair, or replace the Ovens' electrical and other internal components damaged as a result of the Self-Cleaning Defect.

**COUNT IX**
**Violation of the Consumers Legal Remedies Act ("CLRA"),**
**Civil Code §§ 1750, *et seq.***

96.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

97.   Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

98.   CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendant violated this provision by representing that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.

99.   CLRA § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Defendant violated this provision by representing that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.

100.   CLRA § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  Defendant violated this provision by representing that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.  At the time they made sales to Plaintiff and the Subclass members, Defendant was aware of the Self-Cleaning Defect because Defendant issued service bulletins to remedy the issues associated with the High-Temperature Self-Cleaning Cycle and the Self-Cleaning Defect since at least 2011.

101.   Plaintiff and the California Subclass members suffered injuries caused by Defendant's conduct because:  (a) they would not have purchased the Ovens on the same terms if the truth concerning the Self-Cleaning Defect had been known; (b) they paid a price premium due

---

CLASS ACTION COMPLAINT                                                                    17

to the High-Temperature Self-Cleaning Cycle; (c) the Ovens did not perform as promised due to the Self-Cleaning Defect; and (d) Plaintiff and Class members have paid and will continue to pay money to diagnose, repair, or replace the Ovens' electrical and other internal components damaged as a result of the Self-Cleaning Defect.

102.    On January 11, 2017, prior to the filing of this Complaint, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a).  Plaintiff sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.  A true and correct copy of Plaintiff's CLRA letter is attached hereto as Exhibit A.

103.    Wherefore, Plaintiff seeks damages, restitution, and injunctive relief for this violation of the CLRA.

### COUNT X
**Violation of the Unfair Competition Law ("UCL"),**
**Bus. & Prof. Code §§ 17200 *et seq.***

104.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

105.    Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

106.    Defendant is subject to the Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part:  "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

107.    Defendant's conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA and FAL.

108.    Defendant's conduct, described herein, violated the "unfair" prong of the UCL by misrepresenting that the Ovens would function properly after the use of the High-Temperature Self-

Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.

109.    Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL by misrepresenting that the Ovens would function properly after the use of the High-Temperature Self-Cleaning Cycle and that the High-Temperature Self-Cleaning Cycle would effectively clean the Oven without the use of chemicals or cleansers.

110.    Plaintiff and California Subclass members suffered lost money or property as a result of Defendant's UCL violations because:  (a) they would not have purchased the Ovens on the same terms if the truth concerning the Self-Cleaning Defect had been known; (b) they paid a price premium due to the High-Temperature Self-Cleaning Cycle; (c) the Ovens did not perform as promised due to the Self-Cleaning Defect; and (d) Plaintiff and Class members have paid and will continue to pay money to diagnose, repair, or replace the Ovens' electrical and other internal components damaged as a result of the Self-Cleaning Defect.

**COUNT XI**
**False Advertising Law ("FAL"),**
**Business & Professions Code § 17500** *et seq.*

111.    Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

112.    Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

113.    California's False Advertising Law (*Bus. & Prof. Code* § 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

114.    Defendant committed acts of false advertising, as defined by §17500, by using false and misleading statements to promote the sale of the Ovens, as described above.

115.    Defendant knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

116.    Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

117.    Plaintiff and California Subclass members suffered lost money or property as a result of Defendant's FAL violations because:  (a) they would not have purchased the Ovens on the same terms if the truth concerning the Self-Cleaning Defect had been known; (b) they paid a price premium due to the High-Temperature Self-Cleaning Cycle; (c) the Ovens did not perform as promised due to the Self-Cleaning Defect; and (d) Plaintiff and Class members have paid and will continue to pay money to diagnose, repair, or replace the Ovens' electrical and other internal components damaged as a result of the Self-Cleaning Defect.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.    For an order declaring that the Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff, the nationwide Class, and the California Subclass on all counts asserted herein;

d.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.     For an order awarding Plaintiff and the Class and the California Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated:  March 3, 2017          **BURSOR & FISHER, P.A.**

By:   */s/ L. Timothy Fisher*
        L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Nancy Turgeon, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California residing in Sacramento.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      Defendants conduct substantial business throughout this District, and I purchased a Whirlpool Oven with the High Temp Self-Cleaning Cycle, model WOS51EC0AS02 (the "Oven") in this District.  Therefore, the complaint filed in this action is filed in the proper place pursuant to Cal. Civ. Code. 1780(d).

3.      I purchased my Oven based on the representation that it featured a High Temp Self-Cleaning Cycle.  I understood that the High Temp Self-Cleaning feature would function properly and that my Oven would function properly after using the High Temp Self-Cleaning Cycle.  I would not have purchased the Oven had I known that use of the High Temp Self-Cleaning Cycle would cause my Oven to not function properly.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on February 25, 2017 at Sacramento, California.

Nancy Turgeon

**EXHIBIT A**

# BURSOR & FISHER

P.A.

1990 N. CALIFORNIA BLVD.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

L. TIMOTHY FISHER
Tel: 925.300.4455
Fax: 925.407.2700
ltfisher@bursor.com

January 11, 2017

**_Via Certified Mail - Return Receipt Requested_**

Whirlpool Corporation
2000 N. M-63
Benton Harbor, MI  49022-2692

Re:     *Demand Letter Pursuant to California Civil Code § 1782 and Violation of U.C.C. § 2-314*

To Whom It May Concern:

This letter serves as a notice and demand to Whirlpool Corporation ("Whirlpool") for corrective action to on behalf of my client, Nancy Turgeon, and all other persons similarly situated, arising from violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).  This letter also serves as notice pursuant to U.C.C. § 2-607(3)(A) concerning the breaches of warranty described herein.

This notice concerns Whirlpool and KitchenAid brand Vision II ovens that purportedly have a self-cleaning feature (collectively, the "Defective Ovens").  Whirlpool represents that the self-cleaning feature, when "[u]sed periodically to clean light spills on the bottom of the oven, … keeps the oven clean and reduces the need for frequent self-clean cycles."  However, use of this self-cleaning feature renders the Defective Ovens locked and inoperable due to a defect that causes the ovens to overheat and destroy the internal control board.  Despite knowing of this problem, Whirlpool fails to disclose to purchasers that use of the Defective Ovens' self-cleaning feature may damage the ovens, and that the only way to avoid such damage is to not use the self-cleaning feature.

Since 2015, Ms. Turgeon has owned a Defective Oven, a self-cleaning Whirlpool oven, model number WOS51EC0AS02.  Ms. Turgeon purchased her Defective Oven based on the understanding that it offered a self-cleaning feature that would clean her oven for its life.  However, her oven stopped functioning after she used its self-cleaning feature.  Had she known the truth about her Defective Oven's defective self-cleaning feature, she would not have purchased the oven.

By misrepresenting, mislabeling and selling the Defective Ovens, Whirlpool has violated numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).

BURSOR&FISHER
P.A.

To cure these defects, we hereby demand that Whirlpool immediately (1) cease and desist from further illegal sales of the Defective Ovens, (2) issue an immediate recall of the Defective Ovens; (3) make full restitution to all purchasers of the Defective Ovens of all purchase money obtained from sales thereof; and (4) compensate all purchasers for any repair costs incurred as a result of the Defective Ovens self-cleaning feature.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning the design, development, and/or testing of the self-cleaning feature on Whirlpool or KitchenAid ovens;

2.      All documents concerning the advertisement, marketing, or sale of Whirlpool or KitchenAid ovens with the self-cleaning feature; and

4.      All documents concerning communications with purchasers of Whirlpool or KitchenAid self-cleaning ovens, including but not limited to customer complaints.

This letter also serves as a thirty (30) day notice and demand under California Civil Code § 1782 for damages.  Accordingly, should you fail to rectify the situation on a class-wide basis within 30 days of receipt of this letter, we will seek actual damages, plus punitive damages, interest, attorneys' fees and costs.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Very truly yours,

L. Timothy Fisher